FILED

IN THE UNITED STATES DISTRICT COURT   2008 JUL 25  PM 2: 51
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

——————————————————— x
JAMES STRONG, Individually and On Behalf :     Civil Action No.  **A08CA  574 SS**
of All Others Similarly Situated,                        :
                                                                       :     CLASS ACTION COMPLAINT
                                          Plaintiff,         :     FOR VIOLATIONS OF
                                                                       :     FEDERAL SECURITIES LAWS
              vs.                                                  :
                                                                       :     **JURY TRIAL DEMANDED**
ARTHROCARE CORPORATION,                        :
MICHAEL A. BAKER, MICHAEL GLUK,          :
JOHN T. RAFFLE, JOHN H. GIROUX, and      :
RICHARD A. CHRISTENSEN                          :
                                                                       :
                                          Defendants.     :
——————————————————— x


       Plaintiff alleges the following based upon the investigation of plaintiff's counsel, which

included a review of United States Securities and Exchange Commission ("SEC") filings by

ArthroCare Corp. ("ArthroCare" or the "Company"), as well as regulatory filings and reports, press

releases and other public statements issued by the Company, and media reports about the Company,.

Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth

herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons or entities who purchased the

common stock of ArthroCare Corporation ("ArthroCare" or the "Company") between January 24,

2008 and July 18, 2008 inclusive (the "Common Stock Purchaser Class Period") and all persons or

entities who purchased call options or sold put options in ArthroCare common stock between

October 27, 2006 and July 18, 2008 (the "Options Holders Class Period") seeking to pursue

remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). As set forth in detail

below, Defendants knowingly or recklessly made a series of material misrepresentations concerning the Company's business, internal controls and financial results during the Class Period. The Common Stock Class Period begins on the first day after the end of the class period asserted in related class action litigation solely on behalf of common stock purchasers that was commenced in the United States District Court for the Southern District of Florida, *McIlvaine v. AthroCare Corporation*, Case No. 9:08-cv-80343-KLR.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as ArthroCare's principal place of business is in Austin, Texas, and many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff James Strong, as set forth in the accompanying certification incorporated by reference herein, purchased the common stock of ArthroCare at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant ArthroCare is a Delaware corporation, with its principal executive offices located at 7500 Rialto Blvd., Building Two, Suite 100, Austin, TX 78735.

8.    The individual defendants are as follows:

(a)    Defendant Michael A. Baker ("Baker") was, at all material times, the Company's President, Chief Executive Officer, as well as a Director on the Company's Board of Directors.  Between October 27, 2006 and July 18, 2008, Baker sold approximately $4.24 million of his personal holding in ArthroCare stock at artificially inflated prices.

(b)    Defendant Michael Gluk ("Gluk") was employed as the Company's Senior Vice President, Finance and the Company's Chief Financial Officer. Between October 27, 2006 and July 18, 2008, Gluk sold approximately $765 thousand of his personal holding in ArthroCare stock at artificially inflated prices.

(c)    Defendant John T. Raffle ("Raffle") was at all material times, employed as the Company's Senior Vice President and General Manager, Strategic Business Units. Between October 27, 2006 and July 18, 2008, Raffle sold approximately $4.037 million of his personal holding in ArthroCare stock at artificially inflated prices.

(d)    Defendant John H. Giroux ("Giroux") was at all material times, employed as the Company's Senior Vice President, President, Sports Medicine Business Unit.  Between October 27, 2006 and July 18, 2008, Giroux sold approximately $1.785 million of his personal holding in ArthroCare stock at artificially inflated prices.

(e)    Defendant Richard A. Christensen ("Christensen") was at all material times, employed as the Company's Senior Vice President, Operations. Between October 27, 2006 and July 18, 2008, Christensen sold approximately $1.088 million of his personal holding in ArthroCare stock at artificially inflated prices.

Defendants Baker and Gluk, Raffle, Giroux, and Christensen are collectively referred to herein as the "Individual Defendants."

9.     Because of the Individual Defendants' positions and responsibilities with the Company, they were privy to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects by means of their receipt of internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.   Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.   As a result the Individual Defendants may be held liable as direct participants in the wrongs complained of herein.

10.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of Individual Defendants identified above.   Each of the above officers of ArthroCare, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.   Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the National Association of Securities Dealers Automated Quotation System ("NASDAQ") National Market, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock and options written on its common stock would be based upon truthful and accurate information.   The Individual Defendants' misrepresentations and omissions during the Class Periods violated these specific requirements and obligations.

12.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Periods. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is therefore primarily liable for the representations contained therein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of two Classes, consisting of: (i) all those who purchased the common stock of ArthroCare during the period January 24, 2008 through July 18, 2008, inclusive and who were damaged thereby (the "Common Stock Purchaser Class"); and (ii) all person or entities who purchased call options or sold put options during the period October 27, 2006 and July 18, 2008,

inclusive, and who were damaged thereby (the "Options Holders Class"). Excluded from the Classes are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

14.     The members of the Classes are so numerous that joinder of all members is impracticable. Throughout the Class Periods, ArthroCare common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Classes. Record owners and other members of the Classes may be identified from records maintained by ArthroCare or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

15.     Plaintiff's claims are typical of the claims of the members of the Classes as all members of each Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

16.     Plaintiff will fairly and adequately protect the interests of the members of each Class and has retained counsel competent and experienced in class and securities litigation.

17.     Common questions of law and fact exist as to all members of each Class and predominate over any questions solely affecting individual members of each Class. Among the questions of law and fact common to each Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by defendants to the investing public during the Class Periods misrepresented material facts about the business, operations and management of ArthroCare;

(c)      whether defendants acted knowingly or recklessly; and

(d)      to what extent the members of each Class have sustained damages and the proper measure of damages.

18.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of each Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

19.      Defendant ArthroCare is a multi-business medical device company that develops, manufactures and markets minimally invasive surgical products.

20.      The Options Holder Class Period commences on October 27, 2006.  After the close of trading on October 26, 2006, ArthroCare issued a press release (the "October 2006 Press Release") which, *inter alia*, reported revenues for the third fiscal quarter ended September 30, 2006 ("3Q06") of $64.7 million and a net income of $8.7 million, and net income of $8.7, or $0.31 per share.

21.      On October 31, 2006, the Company filed its report for 3Q06 on Form 10-Q with the SEC, which was signed by Defendants Baker and Gluk.  In that Form 10-Q, Defendants, *inter alia*, repeated the revenue and net income figures reported in the October 2006 Press Release.

22.      The 3Q06 Form 10-Q also described in pertinent part the Company's revenue recognition policy as follows:

Revenue Recognition

- 7 -

We recognize product revenue after shipment of our products to customers has occurred, any acceptance terms have been fulfilled, no significant contractual obligations remain and collection of the related receivable is reasonably assured. Revenue is reported net of a provision for estimated product returns.

We recognize license fee and other revenue over the term of the associated agreement unless the fee is in exchange for products delivered or services performed that represent the culmination of a separate earnings process. Royalties are recognized as earned, generally based on the licensees' product shipments. These items are classified as royalties, fees and other revenues in the accompanying statements of operations. Amounts billed to customers relating to shipping and handling costs have also been classified as royalties, fees and other revenues and related costs are classified as cost of product sales in the accompanying statements of operations.

23.     In addition, in Exhibits 31.1 – 31.2 to the Form 10-Q, defendants Baker and Gluk each certified pursuant to Section 302 of the Sarbanes-Oxley Act 0f 2002, *inter alia* that based upon each of their respective knowledge:

- this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report.

- the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report.

- The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15 (e) and 15d-15(e)) for the registrant and have:

    a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

c)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

- The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

24.     On February 15, 2007, ArthroCare issued a press release (the "February 2007 Press Release") which reported: (i) revenues of $69.8 million and net income of $8.2 million, or $0.29 per share for the fourth quarter ended December 31, 2006 ("4Q06"); and (ii) revenues of $263 million and net income of $31.7 million for the year ended December 31, 2006 ("FY 2006"), or $1.14 per share.

25.     On February 27, 2007, the Company filed its annual report for FY 2006 on Form 10-K with the SEC, which was signed by Defendants Baker and Gluk. In that Form 10-K, Defendants, *inter alia*, repeated the revenue, and net income previously reported by Defendants, as set forth above.

26.     The FY 2006 Form 10-K also contained the same description of the pertinent part of the Company's revenue recognition policy as described in ¶ 22, above.

Revenue Recognition

We recognize product revenue after shipment of our products to customers has occurred, any acceptance terms have been fulfilled, no significant contractual

obligations remain and collection of the related receivable is reasonably assured. Revenue is reported net of a provision for estimated product returns.

We recognize license fee and other revenue over the term of the associated agreement unless the fee is in exchange for products delivered or services performed that represent the culmination of a separate earnings process. Royalties are recognized as earned, generally based on the licensees' product shipments. These items are classified as royalties, fees and other revenues in the accompanying statements of operations. Amounts billed to customers relating to shipping and handling costs have also been classified as royalties, fees and other revenues and related costs are classified as cost of product sales in the accompanying statements of operations.

27.    In addition, in Exhibits 31.1 – 31.2 to that Form 10-K, defendants Baker and Gluk each made

the same certified pursuant to Section 302 of the Sarbanes-Oxley Act 0f 2002, *inter alia* that based

upon each of their respective knowledge:

- this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report.

- the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report.

- The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15 (e) and 15d-15(e)) for the registrant and have:

    a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    c)    Disclosed in this report any change in the registrant's internal control

over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

- The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

    a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

28.    On April 26, 2007, ArthroCare issued a press release (the "April 2007 Press Release") which reported revenues of $73.7 million and net income of $7.1 million, or $0.25 per share for the first fiscal quarter ended March 31, 2007 (the "1Q07").

29.    On May 1, 2007, the Company filed its report for 1Q07 on Form 10-Q with the SEC, which was signed by Defendants Baker and Gluk. In the 1Q07 Form 10-Q, Defendants repeated the revenue and net income amounts reported in the April 2007 Press Release.

30.    The Company now described its revenue recognition policy in pertinent part as follows:

The Company recognizes product revenue in accordance with SEC Staff Accounting Bulletin No. 104, Revenue Recognition in Financial Statements ("SAB 104"). Under SAB 104, revenue is recognized when there is persuasive evidence of an arrangement, delivery has occurred or services have been rendered, the sales price is fixed and determinable and collectability is reasonably assured. Generally, the criteria are met upon shipment of the Company's products. In certain cases, at the customer's request, the Company will enter into bill and hold transactions whereby title and risk of loss transfers to the customer, but the product does not ship until a specified later date. Revenue on such transactions is recognized only after ArthroCare has met all conditions for bill and hold transactions set forth in SAB 104, specifically that ArthroCare has no further performance obligations, that the product

is complete and ready for shipment, and that a fixed schedule for delivery of the product is set. Revenue is reported net of a provision for estimated product returns.

31.     In addition, in Exhibits 31.1 – 31.2 to the 1Q07 Form 10-Q, defendants Baker and Gluk each attached the same certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 described at ¶ 23, above.

32.     On July 26, 2007, ArthroCare issued a press release (the "July 2007 Press Release") which reported revenues of $79.5 million and net income of $10.4 million, or $0.37 per share for the second fiscal quarter ended June 30, 2007 ("2Q07").

33.     On August 1, 2007, the Company filed its report for 2Q07 on Form 10-Q with the SEC, which was signed by Defendants Baker and Gluk. In the 2Q07 Form 10-Q, Defendants repeated the revenue and net income amounts reported in the July 2007 Press Release.

34.     In that Form 10-Q, the Company repeated in pertinent part its description of the Company's revenue recognition policy as described at ¶ 30, above.

35.     In addition, in Exhibits 31.1 – 31.2 to the 2Q07 Form 10-Q, defendants Baker and Gluk each attached the same certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 described at ¶ 23, above, as of the end of 2Q07.

36.     On October 22, 2007, ArthroCare issued a press release (the "October 2007 Press Release") which reported revenues of $78.5 million and net income of $11.1 million, or $0.39 per share for the third fiscal quarter ended September 30, 2007 ("3Q07").

37.     On October 29, 2007, the Company filed its report for 3Q07 on Form 10-Q with the SEC, which was signed by Defendants Baker and Gluk. In the 3Q07 Form 10-Q, Defendants repeated the revenue and net income amounts reported in the October 2007 Press Release.

38.     In that Form 10-Q, the Company repeated in pertinent part its description of the Company's revenue recognition policy as described at ¶ 30, above.

39.     In addition, in Exhibits 31.1 – 31.2 to the 3Q07 Form 10-Q, defendants Baker and Gluk each attached the same certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 described at ¶ 23, above, as of the end of 3Q07.

40.     On February 19, 2008, ArthroCare issued a press release (the "February 2008 Press Release") which reported: (i) revenues of $87.5 million and net income of $14.5 million, or $0.50 per share for the fourth fiscal quarter ended December 31, 2007 ("4Q07"); and (ii) revenues of $319.2 million and a net income of $43.2 million, or $1.50 per share for the fiscal year ended December 31, 2007 ("FY 2007").

41.     On February 29, 2008, the Company filed its annual report for FY 2007 on Form 10-K with the SEC, which was signed by Defendants Baker and Gluk. In that Form 10-K, Defendants, *inter alia*, repeated the revenue, and net income previously reported by Defendants, as set forth above.

42.     In that Form 10-K, the Company repeated in pertinent part its description of the Company's revenue recognition policy as described at ¶ 30, above.

43.     In addition, in Exhibits 31.1 – 31.2 to the FY 2007 Form 10-K, defendants Baker and Gluk each attached the same certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 described at ¶ 27, above, as of the end of FY 2007.

44.     On April 21, 2008, ArthroCare issued a press release (the "April 2008 Press Release") which reported revenues of $91.0 million and net income of $9.3 million, or $0.34 per share for the first fiscal quarter ended March 31, 2008 ("1Q08").

45.     On May 12, 2008, the Company filed its report for 1Q08 on Form 10-Q with the SEC, which was signed by Defendants Baker and Gluk. In the 1Q08 Form 10-Q, Defendants repeated the revenue and net income amounts reported in the April 2008 Press Release.

46.     In addition, in Exhibits 31.1 – 31.2 to the 1Q08 Form 10-Q, defendants Baker and Gluk each attached the same certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 described at ¶ 23, above, as of 1Q08.

47.     Then, before the market opened on Monday, July 21, 2008, ArthroCare announced that it would be restating its previously reported financial results from the third quarter 2006 through the first quarter 2008 because it improperly recognized revenue from DiscoCare, Inc., Boracchia & Associates and Clinical Technology, Inc.   As a result, ArthroCare stated that it estimated ArthroCare's reported revenue in 2006 would be reduced by $4 million to $7 million, and that for 2007, reported revenue would be reduced by $20 million to $25 million. Further, ArthroCare stated that reported revenue for the first quarter of 2008 would be reduced by $2 million to $5 million, and that "the restatement will result in material reductions in operating income and net income for the annual and quarterly periods being restated."

48.     The Company also disclosed that while the restatement is being completed, a review of the Company's internal controls will be conducted and that further material misstatements or misconduct might still be uncovered, stating "[d]epending on the results of this review, it may be expanded beyond internal controls."

49.     Upon that announcement, common shares of ArthroCare plummeted from its close of $40.03 on Friday, July 18, 2008 to a close of $23.21 on July 21, 2008, the next day of trading, on extraordinary volume -- a drop of over 42% and the prices of call and put options on ArthroCare common stock similarly declined.   During the period covered by the restatement, the Indicidual Defendants sold  approximately $12 million worth of their personal holdings in ArthroCare, as set forth above.

50.     On July 24, 2008, the Company revealed that the SEC had begun an inquiry into the circumstances surrounding ArthroCare's restatement.

51.     The statements referenced above in ¶¶ 20-46 were each materially false and misleading given that a restatement constitutes an admission that the financial statements referred to above were materially false and misleading when made.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

52.     At all relevant times, the market for ArthroCare's securities was an efficient market for the following reasons, among others:

      (a)     ArthroCare securities met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

      (b)     As a regulated issuer, ArthroCare filed periodic public reports with the SEC; and

      (c)     ArthroCare regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

53.     As a result of the foregoing, the market for ArthroCare's securities promptly digested current information regarding ArthroCare from all publicly available sources and reflected such information in the price of ArthroCare securities. Under these circumstances, all purchasers of ArthroCare's securities during each Class Period suffered similar injury through their purchase of ArthroCare's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint, as these statements are all statements of then present facts and were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of ArthroCare who knew that those statements were false when made.

### COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     During each Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not

- 16 -

misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.     During each Class Period, Defendants materially misled the investing public, thereby artificially inflating the price of ArthroCare common stock and call options, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

59.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of each Class.

60.     As described herein, during each Class Period, Defendants made or caused to be made a series of materially false or misleading statements about ArthroCare's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of ArthroCare and its business, prospects and operations, thus causing the Company's common stock to be overvalued and call and put options to b similarly mis-valued at all relevant times.  Defendants' materially false and misleading statements during each Class Period resulted in Plaintiff and other members of each Class purchasing the Company's common stock, purchasing call options or selling put options on ArthroCare common stock at prices that did not reflect to true financial condition of the Company and suffering losses when the price of ArthroCare common stock declined as the truth became known to the market, thus causing the damages to Plaintiff and the members of the Classes.

**Additional Scienter Allegations**

61.     As alleged herein, Defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents.. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding ArthroCare, their control over, and/or receipt and/or modification of ArthroCare's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ArthroCare, participated in the fraudulent scheme alleged herein.

62.     The restatement of ArthroCare's previously reported financial results as described herein is, in and of itself, an admission that the originally issued financial information was materially false and misleading when made since Generally Accepted Accounting Principles require the restatement of previously issued financial statements where "[e]rrors in financial statements result from mathematical mistakes, mistakes in the application of accounting principles, or oversight *or misuse of facts that existed at the time the financial statements were prepared*." Accounting Principles Board Opinion No. 20 (emphasis added). In this case, the restatements were due to the misuse of facts that existed at the time the original financial statements were prepared and were known about and recklessly disregarded by defendants at the time the false financial statements were prepared and issued.

63.     The market for ArthroCare's common stock and call and put options was open, well-developed and efficient at all relevant times. Plaintiff and other members of the Classes purchased or otherwise acquired ArthroCare common stock or options relying upon the integrity of the market price of ArthroCare's securities and market information relating to ArthroCare, and have been

damaged thereby when the price of ArthroCare common stock declined as the market became aware of the truth concerning ArthroCare's improper practice.

64.     Plaintiff and the members of the Classes would not have purchased ArthroCare common stock or call options or sold ArthroCare put options at the prices they paid or received, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

65.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of each Class have suffered damages in connection with their purchases of ArthroCare common stock or call options or sales of ArthroCare put options during each Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of ArthroCare within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions and responsibilities as officers and/or directors of ArthroCare, and their ownership of ArthroCare stock, the Individual Defendants had the power and authority to cause ArthroCare to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as each Class's Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the members of the Classes against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the members of each Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

GRAVELY & PEARSON, L.L.P.
425 Soledad St., Ste. 600
San Antonio, Texas 78205
Telephone: (210) 472-1111
Facsimile: (210) 472-1110

By: _____
        Matthew R. Pearson
        State Bar No. 00788173
        Marc E. Gravely
        State Bar No. 00787582

KLAFTER & OLSEN LLP
KURT B. OLSEN
1250 Connecticut Ave., N.W., Suite 200
Washington, DC  20036
Tel: (202) 261-3553
Fax: (202) 261-3533

KLAFTER & OLSEN LLP
JEFFREY A. KLAFTER
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
Tel: (914) 997-5656
Fax: (914) 997-2444

ATTORNEY'S FOR PLAINTIFF