# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| IN RE ARTHROCARE CORPORATION SECURITIES LITIGATION | CASE NO.  A:08-CA-574-SS |

## ARTHROCARE CORPORATION'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  THE PARTICULARITY OF PLAINTIFF'S CLAIMS, NOT THE VOLUME, DETERMINES COMPLIANCE WITH THE PSLRA ........................................................ 3

III. THE CCAC FAILS TO ADEQUATELY ALLEGE FALSITY ...................................... 5

   A.   Plaintiff Fails to Adequately Identify the False Statements and Specify Why They Were False When Made ........................................................ 5

   B.   The Restatement Does Not Eliminate the Need to Plead Falsity .......................... 7

IV.  THE CCAC FAILS TO ADEQUATELY ALLEGE SCIENTER .................................... 7

   A.   ArthroCare's Public Filings Defeat Inferences of Scienter ................................. 8

   B.   The Restatement Does Not Raise a Strong Inference of Scienter ...................... 10

   C.   The CCAC Fails to Plead Scienter With Particularity ........................................ 11

      1.   Plaintiff Fails to Attribute Specific Representations to Specific Defendants ............................................................................... 12

      2.   Plaintiff Improperly Relies on Vague Allegations of Unspecified Internal Reports to Allege Scienter ........................................................ 13

      3.   Plaintiff's Due Diligence Allegations Do Not Show Fraud .................... 16

   D.   Plaintiff Fails to Adequately Allege Corporate Scienter ..................................... 16

   E.   Plaintiff's Motive Allegations Are Insufficient to Establish Scienter ................ 17

      1.   Plaintiff's Incentive Compensation Allegations Are Insufficient ........... 17

      2.   Plaintiff's Stock Sales Allegations Are Insufficient ............................... 18

   F.   SOX Certifications Do Not Give Rise to a Strong Inference of Scienter ........... 19

   G.   Plaintiff's Internal Financial Control Weaknesses Allegations Are Insufficient to Establish a Strong Inference of Scienter ..................................... 20

   H.   Plaintiff's Cover-Up Allegations Are Insufficient ............................................. 22

V.   THE CCAC FAILS TO ALLEGE A VALID CLAIM AGAINST APPLEGATE AND RAFFLE ........................................................................................................ 23

VI.  CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

CASES

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
291 F.3d 336 (5th Cir. 2002) ..................................................................................5, 6, 14

*Abrams v. Baker Hughes, Inc.*,
292 F.3d 424 (5th Cir. 2002) .................................................................................. passim

*Ashcroft v. Iqbal*,
__U.S. __, 129 S. Ct. 1937 (2009)........................................................................................3

*Ashlar Fin. Servs. Corp v. Sterling Fin. Co., Inc.*,
No. 300CV2814-AH, 2002 WL 206439 (N.D. Tex. Feb. 8, 2002) ...................................5, 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................3

*Bruns II v. Ledbetter*,
583 F. Supp. 1050 (S.D. Cal. 1984) ....................................................................................12

*Cent. Bank v. First Interstate Bank*,
511 U.S. 164 (1994)..............................................................................................................24

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
497 F.3d 546 (5th Cir. 2007) .........................................................................10, 18, 19, 20

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ..................................................................................................9

*Commc'ns Workers of Am. Plan for Employees' Pensions v. CSK Auto Corp.*,
Nos. CV06-1503, CV06-1580, 2007 WL 951968 (D. Ariz. Mar. 28, 2007)..........................21

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
504 F. Supp. 2d 151 (N.D. Tex. 2007) ...........................................................................19, 24

*Fin. Acquisition Partners, LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) .........................................................................10, 11, 15, 22

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) .....................................................................13, 14, 15, 20

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ..................................................................................................8

*In re Alamosa Holdings, Inc. Sec. Litig.*,
382 F. Supp. 2d 832 (N.D. Tex. 2005) ................................................................................14

## TABLE OF AUTHORITIES
(continued)

Page

*In re Aspeon, Inc. Sec. Litig.*,
   168 Fed. Appx. 836 (9th Cir. 2006)............................................................10

*In re Autodesk, Inc. Sec. Litig.*,
   132 F. Supp. 2d 833 (N.D. Cal. 2000) ........................................................6

*In re Brooks Automation, Inc. Sec. Litig.*,
   No. 06-11068-RWZ, 2007 WL 4754051 (D. Mass Nov. 6, 2007)...........................8

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) ......................................................10

*In re Cornerstone Propane Partners, L.P.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ...................................................5

*In re Cyberonics Inc. Sec. Litig.*,
   523 F. Supp. 2d 547 (S.D. Tex. 2007) .....................................................10

*In re Dell Inc., Sec. Litig.*,
   591 F. Supp. 2d 877 (W.D. Tex. 2008)................................................ passim

*In re Downey Sec. Litig.*,
   No. CV 08-3261, 2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ...........................10

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) .....................................................24

*In re Entrust Sec. Litig.*,
   No. 00cv119, 2002 WL 31968321 (E.D. Tex. Sept. 30, 2002) ........................5, 6

*In re Ferro Corp. Sec. Litig.*, Nos. 04cv1440; 04cv1589, 2007 WL 1691358, at *20 (N.D.
   Ohio June 11, 2007)....................................................................6

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................21

*In re Hypercom Corp. Sec. Litig.*,
   No. CV-05-0455, 2006 WL 1836181 (D. Ariz. July 5, 2006)................................21

*In re Levi Strauss & Co. Sec. Litig.*,
   527 F. Supp. 2d 965 (N.D. Cal. 2007) ......................................................7

*In re Loudeye Corp. Sec. Litig.*,
   No. C06-1442, 2007 WL 2404626, at **7-8 (W.D. Wash. Aug. 17, 2007)..........................21

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Marvell Tech. Group Ltd. Sec. Litig.*,
No. C-06-06286, 2008 WL 4544439 (N.D. Cal. Sept. 29, 2008) .....................................10, 11

*In re OCA, Inc. Sec. and Derivative Litig.*,
No. 05-2165, 2006 WL 3747560 (E.D La. Dec. 14, 2006) .............................................21, 22

*In re Odyssey Healthcare Inc. Sec. Litig.*,
424 F. Supp. 2d 880 (N.D. Tex. 2005) ...................................................................................10

*In re Ramp Networks, Inc. Sec. Litig.*,
201 F. Supp. 2d 1051 (N.D. Cal. 2002) ..................................................................................10

*In re Sec. Litig. BMC Software, Inc.*,
183 F. Supp. 2d 860 (S.D. Tex. 2001) ......................................................................................9

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ...................................................................................................13

*In re Verisign, Inc. Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ....................................................................................7

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
537 F.3d 527 (5th Cir. 2008) ........................................................................................... passim

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2nd Cir. 1991) ...................................................................................................9

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .....................................................................................................8

*Lovelace v. Software Spectrum Inc.*,
78 F.3d 1015 (5th Cir. 1996) .....................................................................................................9

*Lubin v. Sybedon Corp.*,
688 F. Supp. 1425 (S.D. Cal. 1988) ........................................................................................12

*Milano v. Perot Systems Corp.*,
Case No. 02cv1269, 2006 WL 929325 (N.D. Tex. Mar. 31, 2006) ....................................16, 17

*Nathenson v. Zonagen, Inc.*,
267 F.3d 400 (5th Cir. 2001) .....................................................................................................7

*Newby v. Enron Corp.*,
338 F.3d 467 (5th Cir. 2003) .....................................................................................................4

# TABLE OF AUTHORITIES
(continued)

Page

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ............................................................................4

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*,
482 F.3d 372 (5th Cir. 2007), *cert. denied*, __ U.S. __, 128 S.Ct. 1120, 169 L.Ed.2d
957 (2008) ............................................................................................24

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................4

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ...........................................................................12

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977)......................................................................................22

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ................................................................... passim

*Stoneridge Inv. Partners, LLC, v. Scientific-Atlanta*,
552 U.S. 148 (2008)......................................................................................25

*Superintendent of Insurance v. Bankers Life & Cas. Co.*,
404 U.S. 6 (1972).........................................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).........................................................................7, 8, 10, 14

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) ......................................................................3, 17

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
441 F.3d 552 (8th Cir. 2006) .............................................................................5

*United States ex rel. Lam v. Tenet Healthcare Corp.*,
481 F. Supp. 2d 689 (W.D. Tex. 2007)..................................................................5

*United States ex rel. Willard v. Humana Health Plan of Tex.*,
336 F.3d 375 (5th Cir. 2003) .............................................................................5

*Williams v. WMX Techs., Inc.*,
112 F.3d 175 (5th Cir. 1997) .........................................................................3, 5

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)............................................................................24

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Zucco Partners, LLC v. Digimac Corp.*,
　552 F.3d 981 (9th Cir. 2009) ...................................................................................20


**STATUTES**

15 U.S.C. §78t(a) ..........................................................................................................24

15 U.S.C. § 78u-4(b)..............................................................................................11, 23

15 U.S.C. § 78u-4(b)(1) ............................................................................................4, 5

15 U.S.C. § 78u-4(b)(2) ................................................................................................7

15 U.S.C. § 78u-5(c)(1)(A-B)......................................................................................9


**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .......................................................................................................4

Fed. R. Civ. P. 12(b)(6).................................................................................................3

Fed. R. Evid. 201 ...........................................................................................................9

Exchange Act § 10(b) ........................................................................................... passim

Exchange Act § 20(a)..............................................................................................3, 23

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Despite its heft — weighing in at 11-1/2 pounds including appendixes (3-1/2 without) — Plaintiff DeKalb County Pension Fund's ("Plaintiff's") Consolidated Class Action Complaint ("CCAC") lacks the specific factual allegations necessary to satisfy the Private Securities Litigation Reform Act's ("Reform Act's" or "PSLRA's") requirement to plead fraud with particularity.  Rather than plead specific facts, Plaintiff has stuffed the CCAC full of generic allegations, endless block quotes and a wholesale recitation of numerous accounting pronouncements.[1]  Missing are specific allegations showing that any of the named defendants intentionally committed securities fraud over a four year period of time.  Verbosity is not a substitute for particularity.  ArthroCare, therefore, moves to dismiss the CCAC.

The Reform Act requires a plaintiff to (1) specifically identify each allegedly misleading statement and, for each specific statement, the reasons why it is misleading and (2) for each such statement, allege detailed facts giving rise to a strong inference that each defendant acted with fraudulent intent (scienter).  Here, the CCAC fails to identify the precise representations Plaintiff claims are false and the reasons why they were false when made.  The CCAC also fails to allege facts sufficient to give rise to a strong inference that any statements were made with scienter.

Plaintiff's novel use of control person liability betrays the lack of the particular scienter allegations.  While Plaintiff has sued four individuals, it recognizes only two — ex-CEO Michael Baker ("Baker") and ex-CFO Michael Gluk ("Gluk") (collectively referred to in the CCAC as the "Individual Defendants") — made any statements to the market Plaintiff alleges were false. Plaintiff further apparently recognizes it lacks facts sufficient to give rise to a strong inference Baker or Gluk and, consequently, ArthroCare made the allegedly false statements with scienter.

---

[1] On November 18, 2009, Arthrocare Corporation ("ArthroCare" or the "Company") filed with the Securities and Exchange Commission ("SEC") its Form 10-K for the year 2008, which included a restatement of its financial results for the fiscal years ended December 31, 2007, 2006 and 2005 (the "Restatement").

Plaintiff's inclusion of John Raffle ("Raffle") and David Applegate ("Applegate"), as the "Control Person Defendants," when they are not alleged to have made any statements to the market, shows the scienter allegations against Baker, Gluk and ArthroCare are insufficient. Plaintiff clearly hopes their inclusion in this case and what they allegedly did and knew will bridge the scienter divide to allow it to state a valid Section 10(b) claim.  Plaintiff is wrong.

The CCAC fails to adequately allege falsity because:

1. The CCAC does not identify the precise statements Plaintiff alleges are false. Instead, the CCAC block quotes ArthroCare's press releases, SEC filings and conference call transcripts without alleging which statements among the many statements in the quotes are claimed to be false or misleading;

2. The CCAC does not provide specific reasons why each challenged statement was false when made.  Instead, the CCAC sprinkles among the block quotes the same three boilerplate paragraphs stating in the most general terms why the challenged statements are false.  This flaw is worsened because the reasons stated cannot possibly make all of the statements in the block quotes false; and

3. That ArthroCare restated certain of its financial results does not eliminate Plaintiff's burden to plead falsity with particularity.  While a restatement may establish that certain historic statements were false, it does so only for those historic statements impacted by the restatement.  Yet, Plaintiff leans on the restatement to show falsity regardless of whether a particular statement was impacted by the restatement.  The CCAC is devoid of any allegations showing how or why the block quoted material was rendered false by the restatement.

The CCAC fails to adequately allege scienter because:

1. Plaintiff's central claim is that ArthroCare concealed it had difficulty collecting from insurers for its products and concealed the so-called "DiscoCare model."  However, the reports on Form 10-Q and Form 10-K quoted in the CCAC are replete with disclosures about both issues.  No one bent on committing fraud would disclose the very facts Plaintiff claims were concealed;

2. Plaintiff must allege particular facts sufficient to give rise to a strong inference that *each* defendant acted with scienter.  Eschewing this requirement, the CCAC attempts to allege scienter against Baker and Gluk collectively.  That Baker and Gluk had different tenures and roles at the Company exacerbates Plaintiff's flawed allegations;

3. Plaintiff attempts to rely on general allegations Baker and Gluk attended meetings, received internal reports, including due diligence regarding DiscoCare, and were "hands on" managers.  Lacking are allegations identifying any particular meetings or information Baker or Gluk learned from those meetings.  The CCAC does not identify any particular internal report received by Baker or Gluk, much less what they

learned from any such reports.  Finally, alleging Baker and Gluk were "hands on" only describes a style of managing; it does not show fraudulent intent;

4. Plaintiff relies heavily on ArthroCare's restatement to show scienter.  However, as a matter of law, a restatement alone raises no inference of scienter;

5. Because the CCAC does not allege scienter as to Baker or Gluk, the only individuals alleged to have spoken to the market for ArthroCare, corporate scienter is not alleged;

6. Plaintiff relies on various "motive and opportunity" allegations, which as a matter of law, can only bolster allegations of scienter and cannot themselves give rise to a strong inference of scienter.  Plaintiff even attempts to rely on allegations concerning bonuses and stock compensation — allegations that have been consistently found to be insufficient to give rise to any inference of scienter; and

7. Plaintiff's reliance on its novel "control person" theory is a tacit admission scienter has not been adequately alleged as to Baker, Gluk and ArthroCare.

Thus, the CCAC fails to state a valid Section 10(b) claim.  Without a valid Section 10(b) claim for primary liability, the alleged Section 20(a) control person claim fails as well.

## II.   THE PARTICULARITY OF PLAINTIFF'S CLAIMS, NOT THE VOLUME, DETERMINES COMPLIANCE WITH THE PSLRA

"A complaint can be long-winded, even prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

Rule 12(b)(6) provides a complaint shall be dismissed if a plaintiff has failed to allege sufficient facts to state a valid claim.  Fed. R. Civ. P. 12(b)(6).  In making this determination, only specifically pled facts — not conclusory allegations or unwarranted deductions — are accepted as true and are considered.  *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  A complaint must plead facts demonstrating a plausible claim for relief.  *See Ashcroft v. Iqbal*, __U.S. __, 129 S. Ct. 1937, 1950 (2009) (a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") ("'[N]aked assertion[s]' devoid of 'further factual enhancement' will not do."), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To state a Section 10(b) claim, a plaintiff must show "(1) a misstatement or omission (2) of a material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury." *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002). A Section 10(b) claim is subject to both Fed. R. Civ. P. 9(b)'s requirement that fraud be pled "with particularity" and the requirements of the PSLRA. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005).

The PSLRA "was enacted in response to an increase in securities fraud lawsuits perceived as frivolous." *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003); *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 892 (W.D. Tex. 2008). The PSLRA attempts to reduce frivolous securities class actions through heightened pleadings standards.

The PSLRA's pleading requirements are three-fold. *See* 15 U.S.C. § 78u-4(b)(1). First, "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *Id.* Second, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at subd. (b)(2). Third, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at subd. (b)(1). If the complaint fails to comply with any of these requirements, "the court shall, on the motion of any defendant, dismiss the complaint." *Id.* at subd. (b)(3)(A). Congress intended motions to dismiss to serve as a powerful tool for protecting securities issuers from unwarranted claims. *See Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) ("In few other areas are motions to dismiss for failure to state a claim upon which relief can be granted so powerful.").

III.   **THE CCAC FAILS TO ADEQUATELY ALLEGE FALSITY**

A Section 10(b) claim requires falsity to be pled. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002). To plead falsity, a complaint must (1) specify each statement alleged to have been misleading; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reasons why the statement is misleading. *Id.* at 330.

Particularity requires a plaintiff to allege the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Lam v. Tenet Healthcare Corp.,* 481 F. Supp. 2d 689, 698 (W.D. Tex. 2007) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 384 (5th Cir. 2003) and citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc*., 441 F.3d 552, 556 (8th Cir. 2006)); *see also Ashlar Fin. Servs. Corp v. Sterling Fin. Co., Inc.,* No. 300CV2814-AH, 2002 WL 206439, at *4 (N.D. Tex. Feb. 8, 2002) ("Pleading fraud with particularity in this circuit requires time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.") (internal quotations omitted) (quoting *Williams,* 112 F.3d at 178).

### A.   Plaintiff Fails to Adequately Identify the False Statements and Specify Why They Were False When Made

Plaintiff must identify each specific statement it claims was false and explain in detail why it was false when made. *See* 15 U.S.C. § 78u-4(b)(1); *In re Entrust Sec. Litig.*, No. 00cv119, 2002 WL 31968321, at *3-4, (E.D. Tex. Sept. 30, 2002); *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1080-81 (N.D. Cal. 2005). The CCAC comes nowhere near meeting this standard.

The CCAC block quotes over 100 pages of text from ArthroCare's press releases, conference calls, SEC filings and Sarbanes-Oxley ("SOX") certifications, from over a four-year period.  Not once does Plaintiff identify precisely which statements within the block quotes are the statements it claims are false.  (*See, e.g.* ¶¶ 121-259.)  Falsity cannot be pled this way.  *In re Entrust Sec. Litig.*, 2002 WL 31968321 at *5 (plaintiff failed to adequately allege falsity where they used lengthy block quotes without indicating which elements of the block quotes were false); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000) ("[A] complaint is not a puzzle . . . and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to formulating an answer to their complaint.")

The CCAC fails to allege the specific reasons why each allegedly false statement was false when made.  Plaintiff merely follows the string of block quotes with the same conclusory three paragraph refrain that the statements are false because they misstated the Company's financial condition.  (*See e.g.* CCAC ¶¶ 126-128.)  No specific reasons are given.  Plaintiff just alleges unattributed "examples" of "revenue recognition schemes" and "health compliance issues" purportedly lifted from the Company's Restatement.  This does not adequately identify why the statements were false.  *See, e.g., ABC Arbitrage*, 291 F.3d at 348-349; *In re Entrust Sec. Litig.,* 2002 WL 31968321, at *3-4.  Repeating general allegations does not transform them into particular allegations.  *See In re Ferro Corp. Sec. Litig.*, Nos. 04cv1440; 04cv1589, 2007 WL 1691358, at *20 (N.D. Ohio June 11, 2007) (holding that plaintiffs' attempt to plead why the challenged statements were misleading "amounts to little more than a repetitive series of vague, redundant, and conclusory allegations").

For these reasons, Plaintiff has failed to sufficiently identify the false statements.

**B.      The Restatement Does Not Eliminate the Need to Plead Falsity**

Plaintiff alleges ArthroCare's Restatement shows it made false statements.  While the restatement may be sufficient to show that the *restated* financial information was false when initially published, it does not establish the falsity for financial information that was unchanged or for other statements, including "soft information," *i.e.* statements that do not include financial information.  *See In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1204-05 (N.D. Cal. 2007) (a restatement sufficiently showed falsity regarding the items restated); *see also In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 985 (N.D. Cal. 2007) (restatements regarding tax matters establishes the misstatement of financial information pertaining to tax matters).

The CCAC's block quotes include financial information and other statements that were not changed by the Restatement.  Thus, Plaintiff cannot simply rely on the Restatement to establish every public statement by ArthroCare was false.  Plaintiff must provide a specific explanation for why each such statement was false, which it has failed to do.

**IV.    THE CCAC FAILS TO ADEQUATELY ALLEGE SCIENTER**

"Section 10(b) and Rule 10b-5 require proof the defendant acted with 'scienter'-i.e. an intention to deceive, manipulate, or defraud.'"  *Dell*, 591 F. Supp. 2d. at 892 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).  Scienter includes severe recklessness.  *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 407 (5th Cir. 2001).  "Severe recklessness" is not negligence, it is "limited to those highly unreasonable omissions or misrepresentations involving not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and presenting a danger of misleading that is either known to the defendant or is so obvious the defendant must have been aware of it."  *Id.* at 408.

The PSLRA requires a complaint to state particular facts giving rise to a *strong inference* the defendant acted with scienter.  15 U.S.C. § 78u-4(b)(2).  "An inference of fraudulent intent

may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct." *Tellabs Inc.*, 551 U.S. at 314.  Thus, to be strong, the inference must be more than "reasonable" or "permissible" — it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 322; *accord Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 537 (5th Cir. 2008).

### A.      ArthroCare's Public Filings Defeat Inferences of Scienter

In assessing whether scienter has been adequately pled, the court must consider all reasonable inferences that may be drawn from the complaint's allegations and matters subject to judicial notice, including inferences weighing against a finding that scienter has been pled.  *Shaw Group,* 537 F.3d at 533; *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002); *In re Brooks Automation, Inc. Sec. Litig.*, No. 06-11068-RWZ, 2007 WL 4754051, at *10 n.12 (D. Mass Nov. 6, 2007); *Tellabs*, 127 S. Ct. at 2511.  Here, when the alleged misrepresentations are viewed in the context in which they were made, no compelling inference of scienter can be drawn.

At the core of the CCAC are the allegations ArthroCare concealed SpineWand "reimbursement issues," which allegedly led Defendants to engage in a scheme to "improperly bill and account for sales of surgical equipment through the adoption of a business model" Plaintiff calls "the 'DiscoCare Model.'"[2]  (*See e.g.*,  CCAC ¶¶ 2, 40-57.)  Curiously, Plaintiff acknowledges ArthroCare disclosed the "reimbursement issues" in its SEC filings before the Class Period. (*See e.g.*, *id.* ¶ 37.)  Plaintiff then largely ignores the disclosures about reimbursement issues and DiscoCare *during* the Class Period.  In fact, in each press release and

---

[2] The so-called "DiscoCare Model" involved the combination of marketing, distribution and reimbursement approaches through which DiscoCare promoted, sold and/or billed for SpineWand products it purchased from ArthroCare.  This included devices DiscoCare purchased from ArthroCare that DiscoCare provided to its customers generally at no charge in return for either (i) an agreement by the customer to assign to DiscoCare the right to bill third-party insurance companies and other payers for the device or (ii) a letter of protection in a personal injury case.

each SEC filing alleged to be false in the Class Period, ArthroCare warned the market there was uncertainty over reimbursement from healthcare payers.[3]  (See Appendix., Exs. 1-26; [8-Ks, 10-Qs, and 10-Ks in Class Period].)[4]  For example, in its 2007 Form 10-K, ArthroCare disclosed the uncertainty over reimbursement and what DiscoCare did in this context:

> We sell our spinal surgery products through our Spine business unit by means of a network of direct sales representatives and independent orthopedic distributors supported by regional managers. Additionally, prior to December 31, 2007 a third-party billing and reimbursement service provider known as DiscoCare, Inc. would purchase devices from ArthroCare and provide them to customers generally at no charge in return for either the agreement by the facility to assign the right to bill private third-party insurance companies and other payers for the device or a letter of protection in a personal injury case.  More specifically, a third-party billing and reimbursement service provider, such as DiscoCare, deals with insurance pre-authorizations, device procurement, inventory management and claims processing to help reduce device costs and the financial collection risk for facilities who use the service in conjunction with a procedure. Many of ArthroCare's spinal surgery products are leading edge technologies which have not yet received routine coverage decisions from insurance companies and other payers making reimbursement dependent on case by case decisions from various third-party payors.
>
> *   *   *
>
> Plasma Disc Decompression is our version of minimally invasive disc decompression, where tissue is removed from the nucleus to decompress the disc. Several payers consider these procedures, regardless of the method used to remove tissue, to be investigational, and others cover specific methods of disc decompression, but consider Plasma Disc Decompression investigational. DiscoCare, the reimbursement service provider acquired by the Company in December 2007, has had some success in obtaining authorizations for Plasma Disc Decompression procedures, by following a strict medical and documentation regimen, from all major private health insurance carriers and most workers compensation plans, including carriers who consider Plasma Disc Decompression, or disc decompression procedures in general, to be experimental. However, there

---

(Appx. Ex. 24 [2007 Form 10-K at 6].)
[3] Likewise, the forward looking statements included among the press releases and conference calls alleged by Plaintiff to be false (*See e.g.*, CCAC ¶¶ 121-237) are protected by the PSLRA's safe harbor provisions.  15 U.S.C. § 78u-5(c)(1)(A-B); *Southland*, 365 F.3d at 371-372.
[4] Pursuant to Federal Rule of Evidence 201, ArthroCare requests that the Court take judicial notice of the material included in its Appendix in Support of Motion to Dismiss.  In deciding a Motion to Dismiss, the Court can take judicial notice of public reports filed with the United States Securities and Exchange Commission, *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2nd Cir. 1991)); transcripts of press releases and earnings calls, *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 884 (S.D. Tex. 2001); and any documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

is no assurance that we will continue to be successful in obtaining authorizations
for these cases in the future. In addition, there is no assurance that we will be able
to obtain positive coverage decisions from major insurance companies for Plasma
Disc Decompression at any point in the future.

(*See* Appx, Ex. 24.)  No one bent on committing fraud would disclose it in its public filings.

ArthroCare consistently informed the market that certain factors might affect its results of
operations, including the uncertainty of reimbursement from health care payers related to its
SpineWand and other cutting edge products.  Hence, ArthroCare's public filings vitiate against
any inference of scienter.  *See Tellabs*, 127 S. Ct. at 2511.

###### B.     The Restatement Does Not Raise a Strong Inference of Scienter

"[T]he mere publication of inaccurate accounting figures or failure to follow GAAP,
without more, does not establish scienter.  The party must know that it is publishing materially
false information, or must be severely reckless in publishing such information."  *Abrams*, 292
F.3d at 432; *accord Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546,
549, 555 (5th Cir. 2007) (affirming dismissal of 10b-5 action despite company's restatement of
two-and-a-half years of financials); *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278,
290 (5th Cir. 2006) (affirming dismissal of 10b-5 action involving restatement relying solely on
failure to follow accounting standards); *In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547,
553 (S.D. Tex. 2007).  Thus, the Restatement is not an admission any of the Defendants, let
alone all of them, knew that the financial statements and accounting were false when made.  *See
In re Odyssey Healthcare Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 889-890 (N.D. Tex. 2005); *see
also In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1065 (N.D. Cal. 2002); *In re
Aspeon, Inc. Sec. Litig.*, 168 Fed. Appx. 836, 839 (9th Cir. 2006); *In re Downey Sec. Litig.*, No.
CV 08-3261, 2009 WL 736802, at *12 (C.D. Cal. Mar. 18, 2009); *In re Connetics Corp. Sec.
Litig.*, 542 F. Supp. 2d 996, 1012 (N.D. Cal. 2008); *In re Marvell Tech. Group Ltd. Sec. Litig.*,

No. C-06-06286, 2008 WL 4544439, at *6 (N.D. Cal. Sept. 29, 2008) ("plaintiffs cannot show scienter solely by pointing to the fact that Marvell restated its financial statements").

The dearth of facts showing scienter is evidenced by the CCAC's heavy reliance on the Restatement to plead scienter.  As a matter of law, such allegations raise no inference of scienter.

### C.      The CCAC Fails to Plead Scienter With Particularity

The CCAC fails to plead scienter as to each of the Individual Defendants.  Rather, it lumps the Defendants into a single group, and erroneously relies on the group-pleading doctrine. (CCAC ¶¶ 2, 18.)  Such pleading tactics fail to adequately allege scienter as a matter of law.

Scienter must be alleged as to *each defendant* and as to *each act or omission* sufficient to give rise to a strong inference that the defendant acted with the required state of mind. *Southland*, 365 F.3d at 364 (citing 15 U.S.C. § 78u-4(b)).  Group-pleading[5] will not establish scienter because a plaintiff must "distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." *Id.* at 365 (emphasis in original).  Thus, scienter cannot be based on "the collective knowledge of all the corporation's officers and employees acquired in the course of employment." *Id.* at 366.

"A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." *Abrams*, 292 F.3d at 432.  Likewise, "[c]orporate officers are *not* liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded." *Fin. Acquisition Partners LP*, 440 F.3d at 287 (emphasis in original).  Thus, the CCAC's attempt to capitalize on the Restatement's reference to "sales management," "certain other senior managers" and a "former executive officer" cannot support an allegation of scienter against Gluk or Baker.  *Southland*,

---

[5] Group pleading is a now discredited pleading tactic through which plaintiffs attempted to infer knowledge to a group of corporate insiders based merely upon their roles in the company and the nature of the information in question.  *Southland,* 365 F.3d at 364-365

365 F.3d at 374-375 (holding that allegations against "[Company] management" were insufficient to raise a strong inference of scienter). "Without specific allegations the Individual Defendants themselves *actually* knew about a specific accounting violation or internal control problem, the pleadings are simply too vague to support a strong inference of scienter." *Dell*, 591 F. Supp. 2d at 894 (citing *Shaw Group*, 537 F.3d at 540-41) (emphasis added). "Accounting violations can 'easily arise from negligence, oversight, or simply mismanagement, none of which rise to the standard necessary to support a securities fraud action'." *Id.* (citing *Abrams*, 292 F. 3d at 433). A complaint falls short of the "who, what, when, where, and how required under 9(b) and . . . the PSLRA" when it fails to identify "exactly who supplied the information or when they knew the information." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 868 (5th Cir. 2003) (internal quotations marks and citations omitted).

### 1.    Plaintiff Fails to Attribute Specific Representations to Specific Defendants

Plaintiff seeks to hold the Individual Defendants liable for SEC filings they did not sign, for press releases in which they are not quoted, and for conference calls in which they did not participate.[6] Plaintiff lumps Baker and Gluk together in alleging that over 100 pages of block-quoted public filings and conference calls with investors were false. (*See* ¶¶ 121-259.) Lumping defendants together in one wrongdoing monolith fails to meet the requirement of pleading with particularity. *See Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1443 (S.D. Cal. 1988); *Bruns II v. Ledbetter*, 583 F. Supp. 1050, 1051 (S.D. Cal. 1984). For the same reason, allegations against "defendants" as a group cannot be properly imputed to any particular defendant unless the

---

[6] *E.g.* CCAC ¶¶ 121-259. Gluk did not sign or make allegedly false statements in press releases and conference calls related to any SEC filing, or the Company's SEC filings themselves, in fiscal year 2005, or the first quarter of 2006. In addition, he did not make allegedly false statements in press releases related to the Company's Form 10-Qs filed on August 4, 2006 (CCAC ¶ 161), October 31, 2006 (*Id.* ¶ 169), Form 10-K filed on February 27, 2007 (*Id.* ¶ 179, 180),Form 10-Q filed on April 26, 2007 (*Id.* ¶ 188), July 26, 2007, (*Id.* ¶ 195), October 22, 2007 (*Id.* ¶ 206), February 19, 2008 (*Id.* ¶ 218), and April 21, 2008 (*Id.* ¶ 229).

connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded. *Southland*, 365 F.3d at 365. Here, the CCAC fails for this reason.

For example, Plaintiff alleges the "Individual Defendants," meaning Baker and Gluk, made false statements throughout 2005 and in the first quarter of 2006. (CCAC ¶¶ 121-160). However, Gluk was not the CFO during this time and not a single statement during this period is attributed to him. Moreover, Plaintiff quotes portions of press releases and conference call transcripts without identifying who is speaking. *See fn. 6, supra.* This failure to specify which individual defendant made the specific representations Plaintiff contends were false renders the CCAC's allegations incapable of showing with particularity that any defendant acted with scienter. *See Southland*, 365 F.3d at 365.

### 2. Plaintiff Improperly Relies on Vague Allegations of Unspecified Internal Reports to Allege Scienter

The CCAC alleges the Individual Defendants, as "senior executive officers and/or directors," were "privy to non-public information concerning ArthroCare's business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations with other corporate officers and employees, attendance at management and/or Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith." (*See* CCAC ¶ 18.)

Plaintiff further asserts the conclusory allegation the Individual Defendants' scienter is "evidenced by their receipt of internal reports and attendance at meetings and 'hands on' manner of operating and manipulating the business." (*See* CCAC ¶ 487.) These allegations fail because they lack specificity for each defendant showing "what was said at the meeting[s], to whom it was said, or in what context." *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265 (11th Cir. 2006); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) ("a

proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability"). Here, Plaintiff fails to allege the Individual Defendants' (1) *specific* roles at meetings, (2) the *specific* financial data or documentation accessed or received by each of them, or (3) any financial decisions *expressly* attributable to either of them as claimed in paragraphs 18 and 487, among other paragraphs.

To support these blanket assertions, Plaintiff relies on vague confidential witness ("CW") statements.[7]  For instance, Plaintiff claims that CW 5 reported that the "DiscoCare model" was ". . . Applegate's baby, but Baker and the Board went along with this" (*See* CCAC ¶ 487). Plaintiff also alleges CW 16 stated Baker and Raffle "had 'a lot' to do with the problems reported in the news media about ArthroCare and accounting" (*See* CCAC ¶ 488).  Still further, according to the CCAC and CW 16, because SpineWands sold for $7,500 to DiscoCare, but other ArthroCare customers paid $1,300 to $1,500, Baker wanted to "avoid the Average Selling Price topic during conference calls 'so he wouldn't have to talk about it.  They all knew . . . There was no way Baker didn't know'" (*See* CCAC ¶ 490).  Presumably, the "it" in the preceding quote alludes to the "DiscoCare model."  These facts are not particularized and are little more than vague allegations of what Baker may have known.  *See Garfield*, 466 F.3d at 1265.  Moreover, "[P]laintiffs must allege with particularity *when* a comment was made to a confidential source, or, if the source alleges a conversation took place, when and where the

---

[7] To the extent Plaintiff relies on confidential witnesses in this regard, the complaint must plead facts that are "described with sufficient particularity to support the probability that a person in the position occupied by the source…would possess the information pleaded."  *Dell*, 591 F. Supp. 2d at 895 (quoting *ABC Arbitrage*, 291 F.3d at 353).  Plaintiff uses information gathered from a slew of confidential witnesses ("CW") in an attempt to establish scienter of the Individual Defendants.  (*See* CCAC ¶¶ 32-35, 42, 44-45, 47 53-55, 57, 59, 73, 75, 76, 84, 90-114, 487-498).  "Following *Tellabs*, courts must discount allegations from confidential sources."  *Shaw Group*, 537 F.3d at 535.  Moreover, the CCAC fails to plead that any of the CWs were of the type that can be used to plead scienter and none of the CWs speak to Baker or Gluk's knowledge of alleged fraud or accounting irregularities at ArthroCare. *In re Alamosa Holdings, Inc. Sec. Litig., 382* F. Supp. 2d 832, 855 (N.D. Tex. 2005) (finding that sales and marketing confidential witnesses were incompetent to support accounting allegations).

conversation occurred." *Dell*, 591 F. Supp. 2d at 895 (citing *Shaw Group.*, 537 F.3d at 538;

*Southland*, 365 F.3d at 382).  None of these allegations show Baker or Gluk knew any

representations were false when made and, therefore, do not show scienter.  *See id.* ("These

comments reveal nothing fraudulent on their face, and, furthermore, fail to prove any scienter on

the part of the Individual Defendants.")

 The CCAC alleges Baker and "all of the top executives" would attend a weekly meeting

where "'[d]etailed information about the executives' area of responsibility was provided'" and

that "'[t]hey knew what was going on'" (*See* CCAC ¶ 492).  Again, assuming again "it" is the

"DiscoCare model," these allegations lack particularity and fail to show scienter since they did

not allege any facts showing why any representation was false.[8]  *See Garfield*, 466 F.3d at 1265;

*Dell*, 591 F. Supp. 2d at 895.  The absence of allegations pertaining to Gluk is particularly

glaring as he comes up only once—paragraph 495.  There, CW 6, a former "Regional Sales

Manager" [region not identified] claimed that Gluk, among others, "knew and/or understood that

the lack of insurance approvals were limiting sales of PDD and SpineWand products" and that

this knowledge somehow evidences scienter.  (CCAC ¶ 495.)  This is insufficient.  *Id.*  It merely

states what ArthroCare disclosed throughout the Class Period.

 Plaintiff's "collective knowledge" allegations do not give rise to a strong inference of

scienter because none of the allegations connect Baker or Gluk directly to any of the accounting

errors or imputes knowledge to either of them regarding the alleged accounting errors at

ArthroCare.  *See Fin. Acquisition Partners LP*, 440 F.3d at 287; *Southland*, 365 F.3d at 374-375;

*Abrams*, 292 F.3d at 432.  Thus, the CCAC alleges no facts that would permit a strong inference

---

[8] The CCAC also alleges:  (1) "'Baker is a smart guy and pretty hands on as far as fundamentally what was happening at the Company'" (*See* CCAC ¶ 495); (2) Baker attended a meeting in February 2006 characterized by a confidential witness as "David Applegate's meeting" [related to a purported presentation about the personal injury model] (*See* CCAC ¶ 496); (3) Baker conducted "all hands" meetings (*See* CCAC ¶ 497), and (4) Baker "was a very hands-on CEO who frequently gathered employees." (*See* CCAC ¶ 498).

that either Baker or Gluk knew that his representations were "materially false" when made or were "severely reckless" in making those representations.  *Abrams*, 292 F.3d at 432.

### 3.      Plaintiff's Due Diligence Allegations Do Not Show Fraud

Plaintiff tries to show scienter through due diligence for the DiscoCare acquisition.  (*See* CCAC ¶ 499.)  Plaintiff claims Baker stated the "entire DiscoCare program has been carefully vetted and subjected to extensive legal and regulatory review."  (*Id.*)  Plaintiff does not allege when this statement was made, or in what context, but simply asserts from it that the "Individual Defendants' scienter" is established because "they were complicit in the illicit DiscoCare scheme from its inception."  (*Id.*)  Plaintiff does not allege what was learned from the alleged review or whether it even revealed fraud.  Indeed, far more plausible is such a review would have provided assurance DiscoCare's business was completely legitimate.  *See Dell*, 591 F. Supp. 2d at 895.

### D.      Plaintiff Fails to Adequately Allege Corporate Scienter

ArthroCare "cannot have acted with intent to defraud unless at least one corporate official who made or issued an SEC filing, or ordered or approved it or its making or issuance, or furnished information or language for inclusion therein, or the like acted with such an intent." *See Milano v. Perot Systems Corp.*, Case No. 02cv1269, 2006 WL 929325, at *10 (N.D. Tex. Mar. 31, 2006).  Reference to a company as a defendant in concert with the individual defendants is an improper use of the group pleading doctrine.  *See Milano*, 2006 WL 929325 at *10 ("[The] improper use of group pleading [with respect to allegations against the company defendant] masks an inability to plead a strong inference of scienter and ultimately contributes to the court's conclusion that the complaint must be dismissed.").

Plaintiff does exactly what is prohibited—it attempts to bootstrap the alleged wrongdoing of the Control Person Defendants—Applegate and Raffle—into alleging the Company's scienter. (*See, e.g.* CCAC ¶¶ 126, 135, 143, 151, 158, 166, 176, 185, 191, 203, 214, 225, 234, 259.)  This

is improper because "it [is only] appropriate to look to the state of mind of the individual

corporate official or officials who make or issue the statement (or order or approve it or its

making or issuance, or who furnish information or language for inclusion therein, or the like)

rather than generally to the collective knowledge of all the corporation's officers and employees

acquired in the course of their employment." *See Southland*, 365 F.3d at 366.  Only Baker and

Gluk are accused of making false public statements.  (*See, e.g.* CCAC ¶ 18.)  No allegations

show Applegate or Raffle ordered, approved of, or furnished information or language for

inclusion in any alleged false statement.  Therefore, only Baker and Gluk's state of mind can be

considered for corporate scienter.  Because the CCAC does not allege facts sufficient to establish

a strong inference of scienter as to them, scienter of the Company is also foreclosed.  *See Milano*,

2006 WL 929325 at \*10.

> ### E.  Plaintiff's Motive Allegations Are Insufficient to Establish Scienter

Recognizing it has failed to establish scienter directly, Plaintiff attempts to rely on

"motive and opportunity" allegations.  However, such allegations can only serve to bolster

inferences of scienter, and a plaintiff cannot rely on motive and opportunity allegations alone to

create a strong inference of scienter.  *See Dell*, 591 F. Supp. 2d at 896.

> ### 1.  Plaintiff's Incentive Compensation Allegations Are Insufficient

Plaintiff alleges the Individual Defendants' performance-based compensation establishes

scienter.  (*See* ¶¶ 501-503.)  However, "incentive compensation can hardly be the basis on which

an allegation of fraud is predicated."  *Dell*, 591 F. Supp. 2d at 897 (quoting *Tuchman*, 14 F.3d at

1068) (internal quotations omitted).  Otherwise, virtually every corporate executive would be

subject to fraud allegations.  *Dell*, 591 F. Supp. 2d at 897.  "The fact [that] executives at

corporations base their compensation on the performance of the company (as measured partly by

revenue-related numbers), is not surprising or suspicious, and does not lead to an inference of

fraudulent intent." *Id.* at 898 (finding no inference of fraudulent intent, but acknowledging slight inference of scienter because defendants chose to alter plans three times to focus on hitting revenue-related targets).

Plaintiff alleges the Company's 2007 Executive Bonus Plan compensates executives in cash and stock, including bonuses of cash, stock options and long term equity awards.  (*See* CCAC ¶¶ 501-503.)  According to the CCAC, actual bonuses awarded under the plan tie to the achievement of the Company "as it relates to the Company's total net revenue and EBITDA . . . and goals as set forth in the Company's Board-approved operating budget…." (*Id.* ¶ 502.) Plaintiff further alleges executive officers, other than the CEO were eligible for 60% of their base salary and that the CEO was eligible to receive 100% of base, 75% in cash, 25% in RSUs (restricted stock units).  (*Id.*)  Plaintiff does not allege, because it cannot, these percentages were guaranteed.  Indeed, the CCAC admits from 2005 through 2008, neither Baker nor Gluk achieved the bonus goal set out in the Executive Bonus Plan.  (*Id.* ¶ 502.)  Neither Baker nor Gluk achieved the maximum target bonus in any year set forth in the CCAC and, in 2008, neither received any bonus at all.  Consequently, these allegations do not support any inference of scienter.  *See Dell*, 591 F. Supp. 2d at 897-98.

### 2.    Plaintiff's Stock Sales Allegations Are Insufficient

Plaintiff attempts to plead scienter based on stock sales.  Plaintiff claims from May 27, 2005 through August 22, 2007, Baker sold 612,745 shares, and from December 6, 2005 through August 22, 2007, Gluk sold 21,061 shares of ArthroCare stock.  (*Id.* ¶¶ 483, 484.)

"Insider trading alone cannot create a strong inference of scienter."  *Cent. Laborers*, 497 F.3d at 553.  Rather, it can only "enhance the strength of the inference of scienter," and it does so only "if the trading occurs at suspicious times or in suspicious amounts."  *Id.* at 552-553. "Suspicious" generally means "sales [that] are out of line with prior trading practices or at times

calculated to maximize personal profit." *Id.* at 553.  In examining the issue, "the court must consider plausible nonculpable explanations for such officer trading, as well as inferences that favor" the plaintiff.  *Id.* (citations omitted).  "Because corporate executives are often paid in stock and stock options, and often trade those securities, a court will not infer fraudulent intent from the mere fact that the officers have sold some of their holdings." *Dell*, 591 F. Supp. 2d at 896-97 (citing *Shaw Group.*, 537 F.3d at 543).

Plaintiff's stock sales allegations fail to show the sales were made at suspicious times or in suspicious amounts.  Plaintiff claims the Individual Defendants' sales were "unusual and suspicious" because they continued to trade throughout the Class Period and into the *Spring* of 2008.  (*See* CCAC ¶ 484.)  But, Plaintiff does not allege Baker made any trades in 2008, let alone trades that were suspicious in timing or amount.  Moreover, a large majority, if not all, of the trades made by both Baker and Gluk were made pursuant to a 10b5-1 plan and thus rebut an inference of scienter.[9]  (For additional detail regarding stock sales *see* the Motions to Dismiss and exhibits of Baker and Gluk filed concurrently herewith); *see also Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 165 (N.D. Tex. 2007).  Further rebutting any inference the stock was traded at suspicious times, no trades were made at the height of ArthroCare's stock in the Class Period—$65.70 on November 1, 2007.  *See Central Laborers'*, 497 F.3d at 553.

> ### F.     SOX Certifications Do Not Give Rise to a Strong Inference of Scienter

Plaintiff alleges scienter can be drawn from the Individual Defendants' signature on SOX certifications during the Class Period.  (CCAC ¶ 242.)  SOX certifications standing alone,

---

[9] A 10b5-1 plan allows corporate insiders to set a schedule for selling shares over time on specific dates and at specific prices.  Where a substantial portion of sales are pursuant to a prearranged 10b5-1 plan, stock sales do not support an inference of scienter.  *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 165 (N.D. Tex. 2007) (citations omitted).

however, are not indicative of scienter. *Dell*, 591 F. Supp. 2d at 896 (citing *Shaw Group*, 537 F.3d at 545). Plaintiff's assertion would result in a finding of scienter in every case where there was an accounting error or auditing mistake. *See Cent. Laborers*, 497 F.2d at 555 (citing *Garfield*, 466 F.3d at 1266). If this were so, it would "eviscerate[e] the pleading requirements for scienter set forth by the PSLRA." *Zucco Partners, LLC v. Digimac Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009); *Garfield*, 466 F.3d at 1266. Scienter can be inferred only if "facts establishing that the officer who signed the certification had a 'reason to know,' or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions." *Shaw Group*, 537 F.3d at 545 (*quoting Garfield*, 466 F.3d at 1266).

Here, Plaintiff alleges no specific "glaring" accounting irregularities or other "red flags." As shown above, Plaintiff's effort to cobble together disparate theories of scienter does not mask the lack of specific facts showing scienter. Plaintiff's reliance on the SOX certifications fail to create a strong inference of scienter.

### G.    Plaintiff's Internal Financial Control Weaknesses Allegations Are Insufficient to Establish a Strong Inference of Scienter

Plaintiff alleges the Individual Defendants and ArthroCare knew or were severely reckless in not knowing "that every statement issued during the Class Period about the Company's internal controls and their effectiveness were false and misleading." (CCAC ¶ 259.) Plaintiff further alleges that scienter is established because throughout the Class Period, ArthroCare was forced to admit that, from time to time, it had identified material weaknesses in internal controls (*id.*), and that, ultimately, "ArthroCare and Individual Defendants Baker and Gluk knew or were severely reckless in not knowing that the Company had an enduring problem with internal controls . . . [in light of] [t]he pervasive nature of the accounting manipulations and fraudulent schemes with

billing subsidiaries/related parties…."  (CCAC ¶ 507; CCAC ¶ 504-506.)  In essence, Plaintiff claims the restatement's magnitude alone shows scienter.  Plaintiff is wrong.

The internal control issues do not show scienter unless the plaintiff pleads specific facts showing "the Individual Defendants themselves actually knew about a specific accounting violation or internal control problem, [otherwise], the pleadings are simply too vague to support an inference of scienter."  *Dell*, 591 F. Supp. 2d at 894 (citing *Shaw Group*, 537 F.3d at 540-41); *see also In re OCA, Inc. Sec.  and Derivative Litig.*, No. 05-2165, 2006 WL 3747560, at *19 (E.D La. Dec. 14, 2006) (internal control deficiencies are insufficient unless coupled with allegations indicating involvement in the accounting processes making it appear implausible defendants would not have been aware of the real state of the internal control mechanisms); *In re Hansen Natural Corp. Sec. Litig*., 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007); *In re Loudeye Corp. Sec. Litig.*, No. C06-1442, 2007 WL 2404626, at *7-8 (W.D. Wash. Aug. 17, 2007); *Commc'ns Workers of Am. Plan for Employees' Pensions v. CSK Auto Corp*., Nos. CV06-1503, CV06-1580, 2007 WL 951968, at *9 (D. Ariz. Mar. 28, 2007).

A failure of internal controls cannot show scienter because accounting errors necessarily arise from ineffective controls or a break down in controls.  *See In re Hypercom Corp. Sec. Litig.,* No. CV-05-0455, 2006 WL 1836181, at *9 (D. Ariz. July 5, 2006) ("Presumably every company that issues a financial restatement because of GAAP errors will cite as the reason a lack of effective internal controls.")  Since internal control weaknesses and accounting errors go hand-in-hand, control weakness allegations fail to establish scienter because scienter could be established whenever there is a restatement.  *See Hansen*, 527 F. Supp. 2d at 1158; *Hypercom*, 2006 WL 1836181, at *9.

The CCAC is devoid of allegations establishing Baker or Gluk's specific involvement in the Company's accounting processes.  The CCAC does not allege either is a CPA or either was

involved in designing the control systems at ArthroCare. *See In re OCA*, 2006 WL 3747560, at *19. The CCAC fails to allege Baker or Gluk *actually* knew of an internal control problem when they made the public statements. Instead, Plaintiff makes boiler plate allegations Baker and Gluk must have known because of their position in the Company, which is sufficient as a matter of law. *See Abrams*, 292 F.3d at 432; *Fin. Acquisition Partners LP*, 440 F.3d at 287 ("Corporate officers are *not* liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded.")(emphasis in original); *Dell*, 591 F. Supp. 2d at 894 (citing *Shaw Group*, 537 F.3d at 540-41) ("Without specific allegations the Individual Defendants themselves actually knew about a specific accounting violation or internal control problem, the pleadings are simply too vague to support an inference of scienter.").

Indeed, Plaintiff's internal controls weaknesses allegations merely describe inadequate business practices or mismanagement, which might constitute negligence, but is not enough to show scienter. "Congress by [§]10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) (quoting *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1972). For this reason as well, the control weakness allegations are insufficient. *Id.*

## H.     Plaintiff's Cover-Up Allegations Are Insufficient

Plaintiff alleges that because "even at the time of the press release on December 18, 2008, the Individual Defendants revealed only a fraction of the wrongdoing that would ultimately be revealed in the Restatement," the Individual Defendants acted with scienter. (CCAC ¶ 509.) Plaintiff sets forth a "timeline" showing an alleged "pattern of cover-up, denial and deception." (Id. ¶ 510.) These allegations fail to establish scienter.

The PSLRA requires that scienter be pleaded with particularity as to *each defendant* and as to *each act or omission* sufficient to give rise to a strong inference that the defendant acted

with the required state of mind.  *Southland*, 365 F.3d at 364 (citing 15 U.S.C. § 78u-4(b).)  As described above, "[p]leading fraud with particularity in this circuit requires time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  *Ashlar*, 2002 WL 206439, at *4 (internal quotations omitted).

Here, of the nine data points on Plaintiff's "cover-up" timeline, only three actually involve alleged statements made by one of the Individual Defendants—Baker.  Scienter is not shown for Gluk because Plaintiff fails to allege he made any statements in the "timeline" or he influenced the statements that were made on behalf of the Company.  Such conclusory allegations fail to show scienter because SEC filings, press releases, and other public statements are not attributed to both Individual Defendants.  *See Southland*, 365 F.3d at 365.

The allegations regarding statements allegedly made by Baker also lack particularity.  No allegations show Baker knew the public statements made during the Class Period were false when made.  That Baker may have been "overly defensive" in response to a *Citron* article does not establish that he made any statements to the market with scienter.  (CCAC ¶ 510.)

Accordingly, Plaintiff's "cover-up" allegations do not show that Baker or Gluk acted with scienter and, therefore, they do not show scienter as to ArthroCare.

## V.   THE CCAC FAILS TO ALLEGE A VALID CLAIM AGAINST APPLEGATE AND RAFFLE

A secondary liability, control person claim under Section 20(a) of the Exchange Act will fail as a matter of law if a plaintiff has not alleged a valid claim for primary liability.  *See Dell*, 591 F. Supp. 2d at 912.  Since Plaintiff has not alleged a valid Section 10(b) claim, Plaintiff's control person claims also fail as a matter of law.

Plaintiff's "control person" claim also fails as a matter of law because neither Raffle nor Applegate is a "control person" under the Exchange Act. 15 U.S.C. §78t(a) ("[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter…shall also be liable jointly and severally with and to the extent as such controlled person…"); *see Blockbuster, Inc.*, 504 F. Supp. 2d at 168. The CCAC does not allege facts showing Raffle or Applegate controlled Baker, Gluk or the Company. Without this requisite "control," Applegate and Raffle are not control persons.

Finally, by attempting to bootstrap the alleged actions and knowledge of Applegate and Raffle to Baker and Gluk (*see e.g.* ¶¶ 27-88, 487-498), Plaintiff tacitly admits the scienter allegations against Baker and Gluk are insufficient. Otherwise, Plaintiff would not have attempted such a novel use of control person liability. Moreover, through this novel application of control person liability, Plaintiff actually describes an aiding and abetting or scheme liability claim, neither of which can be brought. *See Cent. Bank v. First Interstate Bank*, 511 U.S. 164, 183 (1994) (eliminating aiding and abetting liability for Section 10(b) claims); *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007) ("'[D]eception' within the meaning of § 10(b) requires that a defendant fail to satisfy a duty to disclose material information to a plaintiff."), *cert. denied*, __ U.S. __, 128 S.Ct. 1120, 169 L.Ed.2d 957 (2008); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) ("If *Central Bank* [*v. First Interstate Bank*, 511 U. S. 164 (1994)] is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)") (quotations omitted); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 793-794 (S.D. Tex. 2008). Here, although the CCAC makes repeated references to Applegate and Raffle related to DiscoCare and DRS, they are not alleged to have made any representations to the market. Thus, no claim is stated against either of them (or by

association to Baker and Gluk) because their alleged "deceptive acts," were never disclosed to the public and are too remote to satisfy reliance by Plaintiff.  *See Stoneridge Inv. Partners, LLC, v. Scientific-Atlanta*, 552 U.S. 148, 160-161 (2008).

**VI.   CONCLUSION**

ArthroCare respectfully requests the Court grant its Motion to Dismiss.

Dated:  February 16, 2010

Respectfully submitted,

By: /s/ George B. Butts

ROBERT W. BROWNLIE (CA Bar No. 138793)
NOAH A. KATSELL (CA Bar No. 217090)
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel: 619-699-2700
Fax: 619-699-2701
(Admitted *Pro Hac Vice*)

GEORGE B. BUTTS (TX Bar No. 03543500)
JENNIFER A. LLOYD (TX Bar No. 24013050)
COURTNEY STEWART (TX Bar No. 24042039)
**DLA PIPER US LLP**
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Phone: 512-457-7047
Fax: 512-457-7001

ATTORNEYS FOR DEFENDANT
ARTHROCARE CORPORATION

## CERTIFICATE OF SERVICE

I certify that on this 16th day of February, 2010, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.  Counsel who are not receiving notice through the Court's CM/ECF system are being served via U.S. regular mail at the addresses set out below:

Kurt B. Olsen
Klafter Olsen & Lesser, LLP
1250 Connecticut Ave NW, Suite 200
Washington, DC 20036

Michael Swick
Kahn, Gauthier, Swick, LLC
12 East 41st Street
12th Floor
New York, NY 10017

Paul Jeffrey Geller
Coughlin Stoia Geller Rudman & Robbins, LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432

Ryon M. McCabe
McCabe Rabin, P.A.
1601 Forum Place
Suite 301
West Palm Beach, FL 33401

/s/ George B. Butts
George B. Butts

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**IN RE ARTHROCARE CORPORATION
SECURITIES LITIGATION**

**CASE NO.  A:08-CA-574-SS**

### ORDER GRANTING
### ARTHROCARE CORPORATION'S MOTION TO DISMISS
### CLASS ACTION COMPLAINT FOR VIOLATIONS
### OF FEDERAL SECURITIES LAWS

UPON CONSIDERATION of ArthroCare Corporation's Motion to Dismiss Consolidated Class Action Complaint for Violations of Federal Securities Laws and the response of Plaintiff, if any, the Court enters the following order:

IT IS ORDERED that ArthroCare Corporation's Motion to Dismiss Consolidated Class Action Complaint for Violations of Federal Securities Laws is GRANTED.

Signed this _____ day of _____ 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE